IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 1021018 ALBERTA LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PPS SECURE, LTD., an Illinois corporation )<br>d/b/a PREMIER PAYMENT SYSTEMS; )<br>)<br>PREMIER INTERACTIVE SOLUTIONS, )<br>INC., an Illinois corporation d/b/a PREMIER )<br>PAYMENT SYSTEMS; )<br>)<br>ANDREW SEMENTA, an individual; and )<br>)<br>DOES 1-10, )<br>)<br>Defendants. ) | Case No.:<br><br>Judge: |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff operates a diverse line of e-commerce businesses.

2. On July 6, 2009, Plaintiff and Defendants entered into an agreement whereby Defendants agreed to facilitate Plaintiff's customer payment processes (i.e. to serve as a payment gateway between Plaintiff and Plaintiff's merchant bank) and to contest wrongful chargebacks levied against Plaintiff (the "Agreement," which is attached hereto as Exhibit A).

3. Plaintiff and Defendants specifically negotiated how Defendants were to be compensated for these services, and this understanding was expressly memorialized in the Agreement.

4. The Agreement provided that Defendants were only to be compensated by receiving a portion of the chargebacks that Defendants successfully recovered on behalf of Plaintiff.

5. Nowhere did the Agreement state—and at no time did Plaintiff agree—that Defendants could keep a portion of each transaction it handled on behalf of Plaintiff.

6. Yet this is precisely what Defendants did. Without informing Plaintiff—and in violation of the Agreement—Defendants skimmed off $0.20 of each of Plaintiff's transactions for which Defendants served as the gateway.

7. In this manner, Defendants stole in excess of $1,663,750 from Plaintiff.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332 because the claims at issue are between the citizen of a foreign state on the one hand and the citizens of a U.S. State on the other hand, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. To wit, Plaintiff is a numbered Alberta, Canada corporation and an Alberta, Canada citizen. Defendants are corporations and an individual who are citizens of Illinois. The matter in controversy involves in excess of $1,663,750, which Defendants have unlawfully stolen from Plaintiff.

9. This Court has personal jurisdiction over Defendants because each Defendant resides and conducts business in the State of Illinois. Additionally, Defendants submitted to personal jurisdiction in the Agreement. (Agreement IX.)

10. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C §1391(b)(2) & (c), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and because the Defendants are subject to personal jurisdiction in this District and thus reside in this District.

## PARTIES

11. Plaintiff 1021018 Alberta Ltd. is a numbered Alberta, Canada corporation, with its principal place of business in Sherwood, Alberta, Canada.

2

12. Defendant PPS Secure, Ltd. is an active Illinois corporation, with its principal place of business in Oak Brook, Illinois. On information and belief, PPS Secure, Ltd. operates at times under the unregistered fictitious business name Premier Payment Systems.

13. Defendant Premier Interactive Solutions, Inc. is an active Illinois corporation, with its principal place of business in Oak Brook, Illinois. On information and belief, PPS Secure, Ltd. operates under the registered fictitious business name Premier Payment Systems.

14. Defendant Andrew Sementa is an individual residing in Illinois. On information and belief, Sementa is the founder and President, and Chief Executive Officer of PPS Secure, Ltd. and Premier Interactive Solutions, Inc (collectively, the "Corporate Defendants"). On information and belief, Sementa oversees the day-to-day operations of the Corporate Defendants and has the ultimate authority on any major action taken by the Corporate Defendants.

15. Plaintiff is uncertain of the true names and capacities of those defendants sued by the fictitious names Does 1 through 10, who also are responsible and liable for the injuries alleged in this Complaint and who proximately caused damage to Plaintiff. Plaintiff will amend this complaint to add the true names and capacities of the Does when they become known.

16. Upon information and belief, at all times all Defendants were the principals, agents, and/or co-conspirators of each other, and each acted within the course, scope, and authority of such relationship so that, as a result, all Defendants are jointly and severally liable for the acts alleged herein.

## ALTER EGO ALLEGATIONS

17. Plaintiff is informed and believes, and thereupon alleges, that one or both of the corporations named as defendants herein (the "alter ego entities"), including but not limited to the Doe defendants, and each of them, were at all times relevant the alter egos of each other and

of Defendant Andrew Sementa by reason of the following: Both PPS Secure, LTD and Premier Interactive Solutions, Inc. use the same fictitious business name, Premier Payment Systems. Both companies share the same address and office space; both companies use the same email addresses; both companies use the same company website; the names of both companies are used interchangeably on their website; Defendant Andrew Sementa is president of Premier Interactive Solutions, Inc., but signed the contract with Plaintiff on behalf of PPS Secure, LTD. On information and belief, the two companies have commingled their business operations.

18. On information and belief, there existed and now exists a unity of interest and ownership between the alter ego entities, and between Defendant Sementa and each of the alter ego entities; and the individuality and separateness of the Defendant Sementa and the alter ego entities, and each of the alter ego entities, have ceased for all intents and purposes.

19. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the alter ego entities would, under the circumstances, sanction a fraud and promote injustice in that plaintiff would be unable to realize upon any judgment in its favor.

20. Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, the alter ego entities, and Defendant Sementa and the alter ego entities, acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other, and each is therefore fully liable for the acts of the other.

PLAINTIFF'S & DEFENDANTS' BUSINESSES

21. Plaintiff operates a diverse line of e-commerce businesses.

22. Plaintiff sells a wide variety of products and services ranging from credit related services, to teeth whitening products, to nutritional supplements.

23. All of Plaintiff's products and services are sold online, through Plaintiff's proprietary websites.

24. When a consumer decides to purchase one of Plaintiff's goods or services, and completes a transaction on one of Plaintiff's websites, the consumer's credit or debit card is charged.

25. Plaintiff engages a third party to transfer the consumer's payment information (e.g. credit card number) to the Plaintiff's merchant bank.

26. This third party is referred to in the e-commerce industry as a "payment gateway."

27. Payment gateways ensure that the transaction information passes securely between the consumer and the merchant and then between the merchant and the merchant bank and then back from the merchant back to the merchant.

28. The Defendants offer gateway services for e-commerce merchants.

29. In addition to transferring consumer information from the merchant to the merchant bank (and vice-versa), Defendants ostensibly provide multiple layers of security in the transmission of the information, fraud detection services, and advanced back-end control to prevent employees from viewing consumers' credit card information.

30. Occasionally, a consumer's issuing bank effects a mandatory return of funds to the consumer called a "chargeback." The issuing bank may effect a chargeback for a variety of reasons, including fraudulent use of the card, misrepresentation by the vendor regarding a product or service, a clerical error by the vendor or processor resulting in inaccurate billing, insufficient funds in the consumer's account, or an expired authorization on card.

31. When a merchant does not contest a chargeback, the merchant may not recover the funds returned to the consumer and must pay the issuing bank a chargeback fee. However,

where the merchant can demonstrate to the issuing bank that the chargeback was made in error—or at no fault of the merchant—the merchant can recover the chargeback.

32. Accordingly, it is in Plaintiff's interest to minimize chargebacks, and to contest chargebacks that are not based on Plaintiff's errors.

33. In addition to providing payment gateway services, Defendants also contest chargebacks on behalf of e-commerce merchants, and offer this as a service to their clients, typically in connection with—or as part of—their gateway services.

## THE AGREEMENT

34. In the Spring of 2009, Plaintiff and Defendants began negotiating a contract whereby Defendants would provide gateway services to Plaintiff.

35. Defendant Sementa was the point-person for these negotiations on behalf of Defendants, and ultimately signed the Agreement on behalf of PPS Secure, Ltd.

36. During the negotiations of the Agreement, Sementa requested that Plaintiff pay Defendants a fee for each transaction for which Defendants served as the gateway.

37. Plaintiff refused Defendants' request.

38. Instead, Plaintiff agreed to pay for Defendants' gateway and chargeback services by permitting Defendants to retain a large portion of any chargebacks that Defendants could recover in Plaintiff's favor.

39. Defendants agreed to this proposal, and these compensation terms were memorialized in the Agreement.

40. Thus, Defendants and Plaintiff all understood that the only form of compensation that Defendants would receive for providing their gateway services to Plaintiff was a percentage of the successfully recovered chargebacks (other than an initial retainer).

41. Thus the Agreement provided for the following forms of compensation:

- Merchant will provide to PPS at the time of signing this agreement a retainer in the amount of ten thousand ($10,000). The retainer will be applied to up-front costs that will be incurred by PPS including but not limited to: initial conscription fee of $5,000 covering PPS' cost to structure and implement CB re-present plan specific to Merchant, fictitious name filings, establishing a virtual office. Remainder of retainer will be applied to payment due to PPS per Section IV(b) of this agreement. Merchant will not be required to provide further payments to PPS until retainer has been expired. (Agreement IV.a.)

- PPS and Merchant understand that billing terms will be as follows: Payment to PPS for services rendered is contingent on PPS representing and winning chargebacks in the Merchant's favor. PPS will be awarded seventy-five (75%) of the original Gross Sales Amount of any chargeback that PPS represents and as a result of PPS' re-presentment is found in the Merchant's favor. PPS will provide an Invoice to Merchant in thirty (30) day cycles requesting reimbursement for chargebacks found in Merchant's favor during the previous thirty (30) day cycle, with the first cycle beginning on the first day of service and each subsequent cycle beginning on the first of teh current month. Merchant will be provided an invoice before the (10th) of each month for the previous months (sic) chargebacks found in Merchant's favor. Merchant agrees and acknowledges that they will provide Payment in full within five (5) business days of the Invoice Date. Merchant acknowledges that failure to provide payment within five (5) business days of Invoice Date may result in suspension of services and possible penalties and late fees if PPS' inability to collect payment interferes with PPS's ability to perform Services as set forth in this Agreement. Ten percent (10%) of the monthly fee will be added to the past due amount for every five (5) days Merchant is past due. Merchant understands that past due amounts plus late fees must be paid to PPS prior to PPS resuming Services. (Agreement IV.b.)

42. The Agreement did not allow for Defendants to retain any portion of any transaction it facilitated for Plaintiff.

43. At no time did Plaintiff agree to modify the Agreement orally, in writing, or otherwise.

DEFENDANTS' MISCONDUCT

44. Despite the clear and express terms of the Agreement, Defendants secretly took a portion of each transaction generated through Plaintiff's e-commerce websites.

45. Without informing Plaintiff—and in violation of the Agreement—Defendants skimmed off $0.20 from each of Plaintiff's transactions for which Defendants served as the gateway.

46. Defendants' misconduct went on for several months before Plaintiff was able to discover that Defendant was responsible for Defendants' theft. Upon first discovering the theft, Plaintiff had believed that another party in the transaction process was responsible. Plaintiff expended considerable resources in linking Defendants' misconduct with Defendants.

47. To date, Defendants have stolen in excess of $1,663,750 by stealing $0.20 of each of Plaintiff's transactions.

48. Plaintiff has demanded that Defendants return these stolen funds on multiple occasions.

49. Defendant has refused to return these stolen funds.

## COUNT I

## BREACH OF CONTRACT AGAINST PPS SECURE, LTD.

50. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 45 inclusive.

51. The Agreement is a valid and binding contract between Plaintiff and Defendant PPS Secure, Ltd, supported by valuable consideration.

52. Plaintiff fulfilled all of its obligations under the Agreement.

53. Defendant materially breached the agreement by violating Paragraphs IV.a and IV.b, which govern Defendant's compensation under the Agreement. Specifically, Defendant withheld $0.20 from each transaction, though Defendant was not authorized to do so under the Agreement.

54. Defendant has taken from Plaintiff more than $1,663,750 than is authorized under the Agreement.

55. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## COUNT II

### CONVERSION AGAINST ALL DEFENDANTS

56. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 51 inclusive.

57. Plaintiff has the right to more than $1,663,750 in proceeds from sales of Plaintiff's goods and services sold through Plaintiff's e-commerce websites.

58. Plaintiff has the absolute and unconditional right to the immediate possession of this more than $1,663,750 in proceeds.

59. On multiple occasions, Plaintiff has demanded possession of this more than $1,663,750 in proceeds from Defendants.

60. Despite, Plaintiff's demands, Defendants have taken control and claimed ownership of this more than $1,663,750 in proceeds wrongfully and without authorization, and have refused to return it to Plaintiff.

61. Defendants have committed this misconduct willfully and wantonly with the specific intent to profit for their misconduct.

62. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## COUNT III

### CIVIL EMBEZZLEMENT AGAINST ALL DEFENDANTS

63. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 58 inclusive.

64. Defendants, by virtue of the Agreement, were charged with the duty of receiving and safeguarding money of Plaintiff.

65. Defendants obtained possession of the money of Plaintiff by way of their gateway position. To wit, without informing Plaintiff—and in violation of the Agreement—Defendants skimmed off $0.20 of each of Plaintiff's transaction for which Defendants served as the gateway.

66. Defendants obtained possession of Plaintiff's proceeds by way of Defendants' position as a gateway.

67. While Defendants knew that Plaintiff's proceeds did not belong to them, Defendants converted these sale proceeds for their own use.

68. Defendants have committed this misconduct willfully and wantonly with the specific intent to profit for their misconduct.

69. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays,

    a. That the Court enter a judgment against Defendants that:

        i. Defendant PPS Secure, Ltd. breached its contract with Plaintiff;

        ii. All Defendants committed conversion in violation of Illinois common law;

        iii. All Defendants committed civil embezzlement in violation of Illinois common law.

    b. That the Court order Defendant to pay Plaintiff's damages as follows:

        i. Compensatory damages;

        ii. Punitive damages for Defendants' willful and wanton conduct;

      iii.    Costs and attorneys' fees as provided for by Paragraph X of the Agreement.

  c.    That the Court impose a constructive trust on the amounts wrongfully withheld by Defendants.

  d.    That the Court grant to Plaintiff such additional relief as is just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By:   s/Evan D. Brown
       Evan D. Brown

Evan D. Brown
ebrown@hinshawlaw.com
Kourtney A. Mulcahy
kmulcahy@hinshawlaw.com
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

Karl S. Kronenberger
(*pro hac vice* admission pending)
karl@kbinternetlaw.com
Kronenberger Burgoyne, LLP
150 Post Street, Suite 250
San Francisco, CA 94108
415-955-1155

*Attorneys for Plaintiff 1021018 Alberta Ltd.*