# EXHIBIT A



**PPS Secure Transaction Management Consulting Agreement**

This Agreement made as of the 6th day of July, 2009,

BETWEEN

1021018 Alberta, Ltd., a body corporate, incorporated pursuant to the laws of the Province of Alberta, Canada, whose address is Suite 204, 85 Cranford Way Sherwood Park, Alberta, Canada T8H 0H9 (hereinafter referred to as the "Merchant")

AND

PPS Secure, Ltd., an Illinois Limited Liability Corporation, whose address is 2625 Butterfield Rd., Suite 104s, Oak Brook, IL 60523, ("hereinafter referred to as "PPS")

WHEREAS, PPS, a transaction management corporation, is to consult Merchant on credit card transaction processing and provide transaction management services within the premises set forth in this agreement.

WHEREAS, Merchant, a company who accepts credit cards as payment for services, is seeking to employ PPS as a credit card transaction processing consultant and seeking from PPS transaction management services.

PPS and Merchant herby agree to the following:

I. Consulting Services

    a. Merchant hereby enlists PPS to perform transaction management services specifically set out in Exhibit A attached to this agreement and made a part hereof (hereafter referred to as the "Services"). Exhibit may be amended in writing from time to time when agreed to, in writing, by the Parties to this Agreement and PPS agrees to render such Services during the term of this Agreement. PPS will consult with the officers and employees of Merchant Company concerning matters relating to transactions processing and Services set forth in the terms of this Agreement. Services shall be rendered by PPS at such times and places as shall be mutually agreed by Merchant and PPS.

    b. It is understood that the purpose of Services as set forth in this Agreement is to provide transaction management services that pertain to the perceived betterment of transaction processing methods performed by Merchant and it is mutually understood that neither PPS or the Merchant will benefit if PPS provides inaccurate advice or implements transaction management services that result in an outcome undesirable per the Merchant.

    c. Both parties acknowledge and understand that Merchant may be required to perform tasks and implement protocol requested by PPS. Prior to requesting any changes in Merchants current operations; PPS shall provide to Merchant, in writing, an explanation of how to implement said protocol and perform said tasks and shall

1



explain the intended results of said protocol and said tasks. Should Merchant decline to perform said tasks and implement said protocol; Merchant acknowledges that PPS is not liable for any perceived failures by Merchant pertaining to implied or real outcomes regarding transactions processing.

II. Terms of Agreement

   a. This Agreement will begin on the date of execution by both parties, Merchant and PPS, and shall remain in effect for a term of one (1) year, ending on the same execution date. Thereafter, the Agreement shall automatically be renewed for successive monthly terms and shall continue in effect until canceled.

   b. During the Initial one (1) year term; recognized by the date on which this Agreement begins and the date this Agreement ends; this Agreement in non-cancelable. Subsequent to the date this Agreement ends; this Agreement may be terminated by either party, with or without cause, upon (30) days notice to the other party in writing, by certified mail, overnight courier or personal delivery.

   c. Upon termination of this Agreement for any reason, PPS shall be entitled to receive such compensation and reimbursement, if any, accrued under the terms of this Agreement, that are unpaid as of the date Merchant or PPS ceases this Agreement. Provided that PPS terminates this agreement, they shall wind up in an orderly fashion any assignments for Merchant on which PPS began work prior to notice of termination.

   d. Grounds for termination by PPS include, but are not exclusively limited to, the failure of Merchant to implement transaction management protocols per PPS' request in a timely manner; per PPS' authority as implied by acquiring PPS by Merchant as a provider of transaction management services. Should PPS decide to terminate contractual relations with Merchant for Merchant's failure to comply with this Agreement; PPS shall provide Merchant with (30) days notice. PPS shall finish the Services as set forth in this agreement for the current 30 day billing cycle; but shall not be obligated to continue past the expiration of the current billing cycle.

III. Place Where Services Will be Performed and Site Inspection

   PPS will perform the Services as set forth in this Agreement at the corporate headquarters for PPS Secure, located at 2625 Butterfield Rd., Suite 104s, Oak Brook, IL 60523. PPS may request to conduct a site-inspection, or on-site consulting services, at the Merchant's location in order to assess the Merchant's implementation of transaction management protocols requested of Merchant by PPS. Merchant understands that on-site consulting services may be necessary to optimize PPS' transaction management efforts. PPS shall provide Merchant with written request for any site-inspection that PPS wishes to conduct. Merchant retains the right to decline a site-inspection, however, Merchant agrees and acknowledges that denying PPS a site-inspection may negatively impact PPS' transaction management efforts and may impede PPS' ability to provide optimal services. Merchant agrees that expenses incurred from site-inspections are not included in transaction management fees and PPS shall be compensated separately per site-inspection. Site-inspection fees are outlined in Exhibit A.

2



IV.  Compensations and Reimbursements

   a. Merchant will provide to PPS at the time of signing this agreement a retainer in the amount of ten thousand ($10,000). The retainer will be applied to up-front costs that will be incurred by PPS including but not limited to: initial conscription fee of $5,000 covering PPS' cost to structure and implement CB re-present plan specific to Merchant, fictitious name filings, establishing a virtual office. Remainder of retainer will be applied to payment due to PPS per Section IV (b) of this agreement. Merchant will not be required to provide further payment to PPS until retainer has been expired.

   b. PPS and Merchant understand that billing terms will be as follows: Payment to PPS for services rendered is contingent on PPS representing and winning chargebacks in the Merchant's favor. PPS will be awarded seventy-five (75%) of the original Gross Sales Amount of any chargeback that PPS represents and as a result of PPS' re-presentment is found in the Merchant's favor. PPS will provide an Invoice to Merchant in thirty (30) day cycles requesting reimbursement for chargebacks found in Merchant's favor during the previous thirty (30) day cycle, with the first cycle beginning on the first date of service and each subsequent cycle beginning on the first of the current month. Merchant will be provided an invoice before the (10th) of each month for the previous months chargebacks found in Merchant's favor. Merchant agrees and acknowledges that they will provide Payment in full within five (5) business days of the Invoice Date. Merchant acknowledges that failure to provide payment within five (5) business days of Invoice Date may result in suspension of services and possible penalties and late fees if PPS' inability to collect payment interferes with PPS' ability to perform Services as set forth in this Agreement. Ten percent (10%) of the monthly fee will be added to the past due amount for every five (5) days Merchant is past due. Merchant understands that past due amounts plus late fees must be paid to PPS prior to PPS resuming Services.

V.  Independent Contractor

   Both Merchant and PPS agree that this Agreement creates an independent contractor relationship, not an employment relationship. PPS acknowledges and agrees that the Merchant will not provide PPS with any employee benefits, including without limitation any employee stock purchase plan, social security, unemployment, medical, or pension payments and that income tax withholding is PPS' responsibility.

VI.  Confidentiality

   a. PPS acknowledges in connection with services rendered, the Merchant may disclose to PPS confidential and proprietary information and trade secrets of Merchant's company, and that PPS may also create such information within the scope and in the course of performing the Services. PPS agrees that any information received by PPS during any furtherance of PPS' obligations in accordance with this Agreement, which concerns the personal, financial or other affairs of Merchant will be treated by PPS in full confidence and will not be revealed to any other persons, firms or organizations. Furthermore, PPS aggress to abide by any Account Information Security Standards as set forth by VISA and MasterCard, or any other organization.

3



    b. Both parties acknowledge and understand that information that later becomes available to the public through no breach of this Agreement is not included in Section VI (a), nor is information obtained by PPS that may be required to be disclosed by law, government regulation or court order.

VII.    Intellectual Property

PPS and Merchant understand and acknowledge that Merchant will be provided with access to proprietary and valuable information that the Merchant otherwise would not have access to. Both parties also understand that proprietary information provided to Merchant per this Agreement are not to be disclosed to any third parties without written consent obtained from PPS. Merchant acknowledges that disclosing information regarding PPS' transaction management services to outside parties can result in an immediate termination of this agreement and possible legal action. Both parties acknowledge and understand that the cost of disclosing PPS' inner-workings; including chargeback representation letters, fraud-scrubbing software, chargeback reason codes, and any other transaction management services provided either verbally or in writing to Merchant could cause irreparable harm to PPS.

VIII.    No Solicitation of Employees

Both parties agree that they will not, for a period of two (2) years from the ending of this Agreement, initiate contact with the other party's employees or subcontractors in order to solicit, entice or induce any employee or subcontractor of the other party to terminate an employment or subcontract relationship with the other party to accept employment with the first party without the prior written consent of the other party.

IX.    Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois as applied to agreements made, entered into and performed entirely in Illinois by Illinois residents. Both parties agree that any dispute regarding this Agreement will be heard exclusively in the state or federal courts having jurisdiction in DuPage County, Illinois and both parties agree to be subject to the personal jurisdiction of such courts.

X.    Attorney Fees

If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party in such action shall be entitled to reasonable attorney's fees.

4



### Exhibit A

PPS Secure assesses Chargeback Management Fees on a per Transaction basis. PPS Secure requires all Chargeback Management clients to integrate with the PPS Payment Gateway in order for PPS Secure to properly manage merchant's transactions. Costs for services provided are listed below.

**Chargeback Consulting Fee**

An amount of two-hundred and fifty ($250) will be assessed hourly with two (2) hours minimum, assessed per call to PPS Secure. Consulting Fee only assessed on consulting related calls.

*Consulting fee has been waived per PPS Secure's discretion, with the exception of a Site Inspection/Internal Audit of Merchants physical location and/or Merchant outsourced call centers/customer service centers. Merchant will not be assessed any hourly consulting fees other than Site Inspections fees as outlined in this Agreement.

**Site Inspection Fees**

A minimum of two (2) days will be billed on all site-inspections. A minimum of five (5) hours will be assessed per day PPS is providing on-site consulting services to Merchant, but shall not exceed more than eight (8) billable hours per day. PPS' hourly rate is $375 for on-site consulting services. PPS will invoice Merchant an additional $500 per day flat expenses fee to cover travel related expenses including airfare and accommodations, however, PPS will not assess the flat $500 per day expenses fee on any day that Merchant does not incur billable consulting hours.

**PPS Chargeback Reimbursement**

Seventy-five percent (75%) of the transaction amount of those chargebacks that are represented by PPS on behalf of Merchant shall be paid to PPS in the event that the chargeback is found in favor of Merchant.

**Retainer**

Merchant shall pay PPS in an amount of ten thousand ($10,000) for upfront costs incurred by PPS. Remainder of retainer will be applied to payment due to PPS per Section IV (b) of this Agreement. Merchant will not be required to provide further payment to PPS until retainer has been expired.

5



IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated below.

_____     7-8-09
[PPS' Signature]                    [Date]


MERCHANT

By: __Jesse Willms__          By: _[Signature]_
    [Print Name]                  [Signature]

Title: _____         Title: _CEO_

Date: _____          Date: _July 7/09_

6